# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carol A. Schoettle, : 
               Petitioner : 
                          : 
            v. : No. 661 C.D. 2018
                          : Submitted: October 12, 2018
Unemployment Compensation : 
Board of Review, : 
              Respondent : 

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE ELLEN CEISLER, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                **FILED: November 29, 2018**

Petitioner Carol A. Schoettle (Claimant), acting *pro se*, petitions for review of an order of the Unemployment Compensation Board of Review (Board), which affirmed a Referee's decision and denied Claimant benefits pursuant to Sections 4(u), 401, 404(d), and 401(c) of the Unemployment Compensation Law (Law).[1] The Board found that Claimant had a fault overpayment of $551, which is subject to recoupment pursuant to Section 804(a) of the Law.[2] The Board imposed

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 753(u), 804, 804(d), and 801(c).

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 874(a).

six penalty weeks pursuant to Section 801(b) of the Law[3] and a penalty of $82.65 pursuant to Section 801(c) of the Law.[4]  For the reasons set forth below, we affirm.

Following a separation from employment with Maxim Healthcare Services (Employer), Claimant initiated a claim for unemployment compensation on June 18, 2017, and began receiving benefits.  (Certified Record (C.R.), Item No. 2.)  On October 16, 2017, the Altoona UC Service Center (Service Center) received a request on behalf of Employer to investigate a discrepancy in its records, which suggested that Claimant had received both a payment of wages from Employer and unemployment compensation benefits for the week ending on July 1, 2017.  (*Id.*)  As a result, the Service Center mailed a Claimant Questionnaire to Claimant, notifying her of the discrepancy and requesting Claimant to verify her wages by filling out the questionnaire.  (C.R., Item No. 3 at 1.)  Claimant did not verify her wages.  (*Id*. at 3.)  The Service Center thereafter issued three notices of determination, denying benefits, establishing a fault overpayment, and imposing penalties because Claimant knowingly failed to report all of her earnings.  (C.R., Item No. 5.)  Claimant then appealed the Service Center's decisions, asserting that she was unemployed between June 18, 2017, and July 2, 2017.  (C.R., Item No. 6 at 1.)  The Board scheduled a hearing before the Referee for December 29, 2017, and sent notice of the hearing to Claimant, dated December 8, 2017.  (C.R., Item No. 8 at 1.)  Claimant requested a continuance via letter, dated December 10, 2017, which the Board received on December 19, 2017, and initially denied via a voicemail message to Claimant.  (*Id.* at 9.)  In response, on December 20, 2017, Claimant again requested a continuance,

---

[3] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 871(b).

[4] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 871(c).

this time via email, informing the Board that she would be in California and would not return home until January 14, 2018. (*Id.* at 14.) It also informed the Board that she would not be home to answer her phone. (*Id.*) The Board granted her second request for continuance by mailing a notice on that same date, generally continuing the hearing. (*Id.* at 17.) By notice mailed January 2, 2018, the Board rescheduled the hearing for January 16, 2018. (*Id.* at 19.)

At the evidentiary hearing before the Referee, neither Claimant nor Employer appeared. (C.R., Item No. 9 at 1.) Consequently, after the conclusion of the evidentiary hearing, the Referee issued a decision based on all documentary evidence submitted to the Service Center and Referee. (C.R., Item No. 10 at 2.) The Referee found Claimant ineligible for unemployment compensation benefits pursuant to subsections 401, 4(u), 401(c), and 404(d) of the Law. (*Id.*) The Referee also determined that Claimant had a fault overpayment of benefits under Section 804(b) of the Law and further imposed penalty weeks and a penalty payment under Sections 801(b) and (c) of the Law. (*Id.* at 2-3.) The Referee issued the following findings of fact:

1. On June 18, 2017, the claimant initiated a claim for unemployment compensation benefits and established a weekly benefit rate of $561 and a partial benefit credit of $169.

2. For the week ending July 1, 2017, the claimant filed a claim for benefits and reported that she did not work and had no earnings that week.

3. The claimant earned $2,212.12 the week ending July 1, 2017.

(C.R., Item No. 9.)

3

The Referee reasoned that Claimant was ineligible for benefits under Sections 401,[5] 4(u),[6] 401(c),[7] and 404(d)[8] of the Law, because Claimant reported that she was unemployed for the week at issue, yet she received earnings for that week which would not have been paid to Claimant had she been unemployed. (*Id.* at 2.) The Referee, therefore, held that her claim for benefits for the week ending on July 1, 2017, was invalid. (*Id.* at 2.) Further, the Referee concluded that Claimant had a fault overpayment of benefits under Section 804(a) of the Law[9] in the amount of $551. (*Id.*) The Referee came to this conclusion because Claimant provided false information concerning her earnings, which led to her receipt of benefits for the

---

[5] Section 401of the Law, generally, permits the payment of unemployment compensation benefits to persons who are unemployed.

[6] Section 4(u) of the Law provides:

(u) "Unemployed."—An individual shall be deemed unemployed (I) with respect to any week (i) during which he performs no services for which remuneration is paid or payable to him and (ii) with respect to which no remuneration is paid or payable to him, or (II) with respect to any week of less than his full-time work if the remuneration paid or payable to him with respect to such week is less than his weekly benefit rate plus his partial benefit credit.

[7] Section 401(c) of the Law permits a person to receive benefits if he or she has made a valid application for benefits.

[8] Section 404(d) of the Law provides:

Notwithstanding any other provisions of this section each eligible employe[e] who is unemployed with respect to any week ending subsequent to July 1, 1980 shall be paid, with respect to such week, compensation in an amount equal to his weekly benefit rate less the total of (i) the remuneration, if any, paid or payable to him with respect to such week for services performed which is in excess of his partial benefit credit, (ii) vacation pay, if any, which is in excess of his partial benefit credit, except when paid to an employe[e] who is permanently or indefinitely separated from his employment and (iii) the amount of severance pay that is attributed to the week.

[9] Section 804(a) of the Law mandates that any person who receives unemployment compensation through his or her own fault to which he or she is not entitled must repay the amount received.

week of July 1, 2017. (*Id.*) Lastly, the Referee assessed penalties against Claimant, concluding that her actions violated Sections 801(b) and (c) of the Law,[10] because Claimant knowingly provided false or misleading information in order to receive benefits in a week in which she was employed. (*Id.* at 3.) Accordingly, the Referee imposed a penalty of six weeks of ineligibility and a fee of $82.65. (*Id.*)

Claimant then appealed to the Board, seeking a second hearing on the ground that she was not aware of the new date and time of the rescheduled hearing. (C.R., Item No. 11.) Claimant represented that she had no knowledge of the new date and time of the hearing because she stopped the delivery of her mail when she left the state and that the delivery did not resume until after the hearing. (C.R., Item No. 11.) Claimant also challenged the merits of the Referee's decision, explaining that she had last worked with a particular patient on June 18, 2017, and resumed work with that patient on July 2, 2017. (*Id.*) In the interim, Claimant did not perform any other work for Employer or anyone else. (*Id.*) The Board affirmed the Referee's decision and order and also adopted and incorporated the Referee's findings of fact and conclusions of law. (C.R., Item No. 12.) In response to Claimant's argument, the Board concluded that Claimant's allegation that she was unaware of the new date

---

[10] Sections 801(b) and (c) of the Law provide, in part:

(b) Whoever makes a false statement knowing it to be false, or knowingly fails to disclose a material fact to obtain or increase any compensation or other payment under this act . . . may be disqualified in addition to such week or weeks of improper payments for a penalty period of five weeks and for not more than one additional week for each such week of improper payment . . . .

(c) Whoever makes a false statement knowing it to be false, or knowingly fails to disclose a material fact to obtain or increase compensation or other payment under this act . . . and as a result receives compensation to which he is not entitled shall be liable to pay to the Unemployment Compensation Fund a sum equal to fifteen per centum (15%) of the amount of the compensation. . . .

and time of the hearing did not constitute good cause for failing to attend the hearing. *Id.* In coming to its decision, the Board reasoned:

> The claimant's appeal to the Board alleges that she had been away and placed a stop on her mail delivery, and therefore, was not aware of the hearing time until after she returned and mail delivery resumed. However, placing a hold on the delivery of mail is effectively the same thing as not opening it. The Board views the following holding from a Mississippi unemployment compensation case to be relevant and persuasive: "the evidence provided by [the claimant] shows that his failure to receive the notification was of his own doing. [The claimant] did not receive the notification because he placed a hold on his mail without first notifying the [Mississippi Department of Employment Security], even knowing that he had a pending claim." *Cerrato v. Mississippi Employment Sec. Comm'n*, 968 So.2d 957, 961 (Miss. Ct. App. 2007). Therefore, the claimant has not demonstrated good cause for failing to attend the Referee hearing.

(*Id.* (alterations in original).) Claimant now petitions this Court for review.

On appeal,[11] Claimant asserts that the Board erred by concluding that Claimant's allegation that she was unaware of the new date and time of the rescheduled hearing did not constitute good cause for failing to attend the hearing. Claimant also asserts that substantial evidence does not exist to support finding of fact number 3—*i.e.*, that she "earned $2,212.12 the week ending July 1, 2017." (C.R., Item No. 9.)

We will first address Claimant's error of law claim. The Pennsylvania Administrative Code contains procedural requirements for proceedings before the

---

[11] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

Board. Section 101.51 of Title 34 of the Pennsylvania Administrative Code (Code) provides:

> If a party *notified of the date, hour and place of a hearing* fails to attend a hearing *without proper cause*, the hearing may be held in his absence. In the absence of all parties, the decision may be based upon the pertinent available records. The tribunal may take such other action as may be deemed appropriate.

34 Pa. Code § 101.51 (emphasis added). Further, where a party requests a further hearing, the Code sets forth the governing procedures:

> (a) *If a party who did not attend a scheduled hearing subsequently gives written notice*, which is received by the tribunal prior to the release of a decision, *and it is determined by the tribunal that his failure to attend the hearing was for reasons which constitute "proper cause," the case shall be reopened.* Requests for reopening, whether made to the referee or Board, shall be in writing; shall give the reasons believed to constitute "proper cause" for not appearing. . . .
>
> . . . .
>
> (c) *A request for reopening the hearing which is not received before the decision was mailed, but is received or postmarked on or before the 15th day after the decision of the referee was mailed to the parties shall constitute a request for further appeal to the Board and a reopening of the hearing, and the Board will rule upon the request.* If the request for reopening is allowed, the case will be remanded and a new hearing scheduled, with written notice thereof to each of the parties. At a reopened hearing, the opposing party shall be given the opportunity to object to the reopening if he so desires. If the request to have the hearing reopened is denied, the Board will append to the record the request, supporting material and the ruling on the request, so that it shall be subject to review in connection with any further appeal to the Commonwealth Court.

34 Pa. Code § 101.24 (emphasis added).

7

"We have held that not receiving or not timely receiving a hearing notice can constitute 'proper cause' for reopening a hearing." *Volk v. Unemployment Comp. Bd. of Review*, 49 A.3d 38, 40 (Pa. Cmwlth. 2012). Further, our jurisprudence generally holds that there is a presumption that the notice requirement is met upon mailing, pursuant to the common law mailbox rule. *See Gaskins v. Unemployment Comp. Bd. of Review*, 429 A.2d 138 (Pa. Cmwlth. 1981) (applying common law mailbox rule to hold that claimant received notice on date notice was mailed). This presumption, however, is rebuttable. *Volk*, 49 A.3d at 41. Typically, the party that makes the claim that he or she did not receive notice must be given an opportunity to rebut the presumption. *See Coin Automatic Laundry Equip. Co. v. Unemployment Comp. Bd. of Review*, 447 A.2d 690 (Pa. Cmwlth. 1982) (holding that employer that claimed it did not receive notice of hearing in mail until day after hearing had already been concluded, must be afforded opportunity to rebut presumption that notice requirement was established). If the party seeking a second hearing does not include reasons for failing to appear at the hearing, however, the Board may not remand the case for additional hearings. *McNeill v. Unemployment Comp. Bd. of Review*, 511 A.2d 167, 169 (Pa. 1986). Further, "if the reasons proffered are clearly legally insufficient to support the finding of proper cause . . . such a hearing would be unnecessary." *Volk*, 49 A.3d at 47 n.12. Accordingly, we have held that where a party fails to appear at a scheduled hearing—through his or her own fault—the party does not have good cause for failing to attend a hearing. *Eat'N Park Hospitality Group, Inc. v. Unemployment Comp. Bd. of Review*, 970 A.2d 492, 494 (Pa. Cmwlth. 2008). We have also held that "a claimant's own negligence is insufficient 'proper cause,' as a matter of law, to justify his failure to appear at a

8

referee's hearing and warrant a new hearing." *Savage v. Unemployment Comp. Bd. of Review*, 491 A.2d 947, 950 (Pa. Cmwlth. 1985).

In *Eat'N Park Hospitality Group, Inc.*, after a claimant filed for unemployment compensation benefits, the employer appealed and asked for its witness to testify by telephone. *Eat'n Park Hospitality Group, Inc.*, 970 A.2d at 492. The employer instructed the Referee to reach its witness by calling the employer's witness's contact number and extension. *Id*. at 493. When the Referee called the employer's witness at the number she was given, no one answered the telephone. *Id*. The Referee, thereafter, made her decision based on the claimant's testimony. *Id*. The employer then appealed to the Board, which remanded the case to the Referee to consider the employer's witness's testimony as to whether he had good cause for not appearing at the hearing. *Id*. at 494. The Board determined that the employer's witness did not have good cause for failing to appear at the hearing. *Id*. On appeal to this Court, the employer claimed that the Referee was obligated to follow the instructions on the voice mail system. *Id*. According to the employer, if the Referee followed said instructions, she would have dialed zero and contacted the receptionist, who would have forwarded the call to the employer's witness who was awaiting the call in the conference room. *Id*. We held that the Referee was not obligated to experiment with the voice mail system, rather than to follow the instructions given by the employer, which was to dial the number and extension given. *Id*. Further, we characterized the employer's attempt to blame the Referee for its witness's failure to appear at the hearing as an attempt to shift fault. *Id*. We stated that "[t]his court will not permit [the e]mployer to shift fault to the Referee for not experimenting with the voice mail system to determine what would happen if she pressed '0' rather than follow the instructions given by [the e]mployer." *Id*.

9

The employer failed to ensure that its witness was available at the number and extension given, and, therefore, failed to establish good cause for failing to attend the hearing. *Id.*

Here, Claimant does not allege that she did not receive notice of the hearing. Rather, Claimant argues that she should receive a second hearing based on the following proffered reason: "I had been away and had my delivery stop [sic]. Mail delivery did not resume until after the schedule [sic] time of the interview. I was unaware of the new time." (C.R., Item No. 11 at 4.) In other words, Claimant admits that she was unaware of the date and time of the rescheduled hearing, because, through her own actions, she was not able to receive her mail. The Board responded by concluding that Claimant's proffered reason for failing to attend the hearing does not constitute good or proper cause. We agree with the Board's conclusion. We note that Claimant could have asked someone to forward or check her mail or called the Board while away to inquire as to the date of the rescheduled hearing, if any. Claimant's actions of stopping her mail combined with not ensuring that she could receive the notice some other way constitutes at the very least, a negligent act. These actions may also be construed as an intentional act that resulted in her failing to attend the hearing. In any case, Claimant alone bears the fault in this instance—not the Board or any third party. Pursuant to our decisions in *Eat'N Park Hospitality Group, Inc.* and *Savage*, Claimant has failed to establish proper or good cause sufficient to warrant re-opening her hearing. The Board, therefore, did not err in denying Claimant's request for a further hearing.

Next, Claimant asserts that finding of fact number 3 is not supported by substantial evidence of record. Substantial evidence is defined as relevant evidence upon which a reasonable mind could base a conclusion. *Johnson v. Unemployment*

10

*Comp. Bd. of Review*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986). In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. *Id.* A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole. *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 831 (Pa. 1977). The Board's findings of fact are conclusive on appeal only so long as the record, taken as a whole, contains substantial evidence to support them. *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984). "The fact that [a party] may have produced witnesses who gave a different version of the events, or that [the party] might view the testimony differently than the Board is not grounds for reversal if substantial evidence supports the Board's findings." *Tapco Inc. v. Unemployment Comp. Bd. of Review*, 650 A.2d 1106, 1108-09 (Pa. Cmwlth. 1994). Similarly, even if evidence exists in the record that could support a contrary conclusion, it does not follow that the findings of fact are not supported by substantial evidence. *Johnson v. Unemployment Comp. Bd. of Review*, 504 A.2d 989, 990 (Pa. Cmwlth. 1986).

Finding of fact number 3 provides: "The claimant earned $2,212.12 the week ending July 1, 2017." (C.R., Item No. 10 at 1.) The Service Center received a letter from Equifax Workforce Solutions, on behalf of Employer, informing it that Employer paid Claimant the sum of $2,212.12 for the week ending on July 1, 2017—the same week in which Claimant received unemployment compensation benefits. (C.R., Item No. 2.) The Service Center then asked Claimant to verify her income. (C.R., Item No. 3.) Claimant failed to respond to the Service Center's request. (*Id.* at 3.) After the Service Center issued its determination denying her benefits,

11

Claimant appealed but then failed to appear at the hearing where she could have presented evidence to prove her statement in her petition for appeal. (C.R., Item No. 9.) Based on all the evidence before her, the Referee affirmed the Service Center's determination. (C.R., Item No. 10.) The evidence of record includes the letter from Equifax Workforce Solutions on behalf of Employer, alleging that Claimant received payment from Employer for work performed in the same week for which she received benefits. The record, therefore, contains substantial evidence to support finding of fact number 3.

Accordingly, for the reasons discussed above, we affirm the Board's order.

P. KEVIN BROBSON, Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Carol A. Schoettle,                     :
                           Petitioner   :
                                        :
           v.                           :     No. 661 C.D. 2018
                                        :
Unemployment Compensation               :
Board of Review,                        :
                           Respondent   :

# O R D E R

AND NOW, this 29th day of November, 2018, the order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
P. KEVIN BROBSON, Judge