Arthur E. Johnson, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued November 14, 1985, before Judges CRAIG and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Thomas J. Graham, Finder, Allison, Olshock & Graham,* for petitioner.

*Charles G. Hasson,* Acting Deputy Chief Counsel, for respondent.

Opinion by Judge Palladino, January 2, 1986:

Arthur E. Johnson (Claimant) appeals from an order of the Unemployment Compensation Board of Review (Board) affirming a referee's decision to deny unemployment compensation benefits to Claimant under Section 3 of the Unemployment Compensation Law[1] (declaration of public policy that benefits will be granted only to persons unemployed through no fault of their own). We affirm.

Claimant was employed by the H. J. Heinz Company (Employer) as a chef in the employees' cafeteria until his last day of employment on December 22, 1982. On Christmas day of 1982, a female employee of Employer, with whom Claimant had been living, was shot to death in Claimant's home, and Claimant was arrested and charged with her murder. Three days later, a representative of Employer visited Claimant in jail, and discussed the possibility of Claimant resigning his position. After he was released on bond, Claimant again met with Employer's representative and again was asked to consider resigning. When Claimant refused to resign, he was suspended[2] and was told, at that time, that it was because of absenteeism.

At an unemployment compensation hearing, however, the referee found that Claimant was suspended because of the homicide charge against him and because other employees of Employer were aware of what had occurred. According to the referee, Employer was concerned that Claimant's continued presence would have a distracting effect on the other em-

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §752.

[2] Claimant was placed on indefinite suspension by Employer, with the proviso that Employer would consider reinstating Claimant if he is found innocent of the charges lodged against him. This suspension now amounts to a discharge, however, because Claimant was later convicted of voluntary manslaughter.

ployees who used the cafeteria and, furthermore, Claimant was aware that Employer held its employees to a high standard of conduct and that they could be discharged for acts that did not occur at the workplace. In light of these facts, the referee determined that, under Section 3 of the Law, Claimant was ineligible for benefits because his unemployment was caused by his own fault. The decision of the referee was thereafter affirmed by the Board.

On appeal to this Court, Claimant contends that there is not substantial evidence to support certain findings of the referee, namely: (1) that other employees were aware of what had occurred because of media coverage; (2) that Employer was concerned that Claimant's continued presence would have a distracting and disquieting effect on the employees who used the cafeteria; and (3) that Claimant was aware of Employer's policy that employees may be discharged for a number of reasons, including the commission of acts of violence.[3] Furthermore, Claimant argues that the evidence does not establish his ineligibility for benefits under Section 3, because it does not show that Claimant's conduct was inconsistent with accepted standards of behavior nor that the conduct adversely reflected upon his ability to perform his assigned duties.

Initially, we note that our scope of review of this case is limited to determining whether or not the factual findings are supported by substantial evidence and whether or not an error of law has been committed. *Clark v. Unemployment Compensation Board of Re-*

---

[3] Claimant also contests the referee's finding that Claimant was aware that Employer held its employees to a high standard of conduct and that they could be discharged for acts that were not work-related. We do not pass upon the merits of this contention, however, and note merely that this finding is not necessary or pertinent to our decision in this case.

*view*, 80 Pa. Commonwealth Ct. 513, 517, 471 A.2d 1309, 1310 (1984).

Substantial evidence is relevant evidence upon which a reasonable mind could base a conclusion. *Fritzo v. Unemployment Compensation Board of Review*, 59 Pa. Commonwealth Ct. 268, 429 A.2d 1215 (1981). In determining whether substantial evidence exists to support the Board's findings, we must examine the testimony in the light most favorable to the prevailing party below, giving that party the benefit of any inference which can be drawn logically and reasonably from the evidence. *Dickey v. Unemployment Compensation Board of Review*, 78 Pa. Commonwealth Ct. 58, 466 A.2d 1106 (1983).

Having thoroughly reviewed the record, we conclude that there is substantial evidence to support all of the necessary findings of fact made by the referee, including those specifically contested by Claimant. The testimony of both Claimant and Employer's witness indicates that the news media had reported the killing, and had identified Claimant and the victim. The testimony also establishes that Claimant was aware, by way of Employer's written policy, that Employer disapproved of employees committing violent acts. Moreover, the testimony of Employer's witness establishes that Employer was concerned that Claimant's presence in the cafeteria could have a detrimental effect on the safety and well-being of the other employees who used the cafeteria. In sum, the testimony of the parties supports the factual conclusions reached by the referee and, therefore, those findings are supported by substantial evidence.

Addressing Claimant's argument that, as a matter of law, the evidence does not establish his ineligibility for benefits under Section 3 of the Law, we begin by noting that this Court has adopted a two-pronged test

in making such a determination. In order to justify a denial of benefits under Section 3, an employer must show (1) that the claimant's conduct was contrary to acceptable standards of behavior, and (2) that the conduct in question directly reflects upon claimant's ability to perform his assigned duties. *Unemployment Compensation Board of Review v. Derk*, 24 Pa. Commonwealth Ct. 54, 57, 353 A.2d 915, 917 (1976).

In the case at bar, it is apparent from the record that there is substantial evidence to support the conclusion that the first prong of the *Derk* test has been met. Claimant's own testimony indicates that he was suspended because of a domestic quarrel that occurred in his house and that resulted in violence. Claimant's statements to this effect are sufficient, in and of themselves, to support the conclusion that Claimant's conduct was contrary to acceptable standards of behavior.[4]

In regard to the question of whether the second prong of the *Derk* test has been met, it is important to remember that no single factor is necessarily dispositive of the issue of whether a claimant's conduct reflects adversely on his fitness to do his job. *Snelson v. Unemployment Compensation Board of Review*, 93 Pa. Commonwealth Ct. 539, 502 A.2d 734 (1985). Rather, if an examination of all relevant circumstances, including especially the nature of the conduct in question, leads to the conclusion that a claimant's conduct is incompatible with his job responsibilities, then the second prong of the *Derk* test

---

[4] In passing, we note that, after the Board had rendered its decision, the record in this case was modified to include a stipulation by the parties to the effect that Claimant had been convicted of voluntary manslaughter. Because this information was not available to the Board when it made its determination, however, this Court does not now rely on such evidence of Claimant's conviction in finding support for the Board's conclusions.

is satisfied. *Id.; see also Sheaffer v. Unemployment Compensation Board of Review,* 92 Pa. Commonwealth Ct. 431, 501 A.2d 708 (1985). In our cases, we have examined a broad range of factors in determining whether a claimant's ability to do his job has been adversely affected by his otherwise unacceptable conduct, and we have found that various factors may be dispositive of the question in a given case. Specifically, this Court has considered as being especially relevant in this determination such factors as the serious nature of a claimant's conduct,[5] and the fact that the conduct in question involved or was directed against a co-employee.[6]

In the instant case, the Board specifically considered as relevant the following factors: the serious nature of Claimant's conduct, which resulted in the death of another individual; the fact that the victim was another employee of Claimant's employer; and Employer's concern regarding the impact on its other employees who, when using the cafeteria, would be in proximity with Claimant.

Our review of the record supports the Board's determination that the above-mentioned factors provide sufficient evidence to establish that the Claimant's conduct is incompatible with his work responsibilities. Because both prongs of the *Derk* test have thus been

_____

[5] *See, e.g., Unemployment Compensation Board of Review v. Ostrander,* 21 Pa. Commonwealth Ct. 583, 347 A.2d 351 (1975), in which this Court held that a truck driver's conviction on the charge of conspiracy to violate the civil rights of a fellow truck driver was of a sufficiently serious nature as to support a finding of Section 3 fault.

[6] *See, e.g., Snelson,* 93 Pa. Commonwealth Ct. at 539, 502 A.2d at 737 (1985), in which this Court considered as relevant, for the purpose of establishing fault under Section 3, the fact that the claimant had killed someone who was a co-worker.

met, the Claimant is at fault, for Section 3 purposes, and must be denied benefits. Accordingly, we affirm the decision and order of the Board.

ORDER

AND Now, January 2, 1986, the order of the Unemployment Compensation Board of Review at No. B-219232, dated June 24, 1983, is affirmed.

---

DISSENTING OPINION BY JUDGE CRAIG:

Under *Unemployment Compensation Board of Review v. Derk,* 24 Pa. Commonwealth Ct. 54, 57, 353 A.2d 915, 917 (1976)—as the majority opinion forthrightly acknowledges—the law disqualifies a claimant from benefits because of fault only if his unacceptable external conduct directly reflects upon his ability to perform his assigned job duties. To hold that an accusation or even a conviction of a crime off the job is disqualifying because of the employer's "concern regarding the impact on its other employees" means that we are letting the subjective judgment of the employer provide the essential link to the claimant's job duties. Neither the findings nor the record show that there was an actual impact upon other employees in any way detrimental to their work.

Equally irrelevant to the claimant's job duties is the fact that the external crime involved another employee as victim, when, as here, there is no showing that the victim's employment relationship had any pertinence to the wrongdoing.

This extension of the fault disqualification amounts to the imposition of a bill of attainder upon those who are accused or convicted of crime, stripping them of statutory rights and entitlement not germane to the crime or the punishment.

This court should not grant to employers or to the compensation authorities an unfounded power to pass judgment—moral or otherwise—upon external actions unrelated to the job. That responsibility must remain with the criminal justice system, subject to the safeguards it provides.