# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ron Beckham,                              :
                          Petitioner      :
                                          :
            v.                            :    No. 1735 C.D. 2019
                                          :    Submitted:  November 12, 2020
Unemployment Compensation                 :
Board of Review,                          :
                          Respondent      :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge (P.)
          HONORABLE ELLEN CEISLER, Judge


*OPINION NOT REPORTED*


**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                      **FILED:  December 11, 2020**

Petitioner Ron Beckham (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board).  The Board affirmed a decision of a Referee, thereby denying Claimant unemployment compensation benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law),[1] relating to willful misconduct.  For the reasons set forth below, we affirm.

Claimant applied for unemployment compensation benefits after separating from his position as a production employee at Dietz & Watson (Employer). (Certified Record (C.R.), Item Nos. 2, 3.)  The Altoona UC Service Center (Service Center) determined that Claimant was ineligible for unemployment compensation

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

benefits for the waiting week ending on June 29, 2019. (C.R., Item No. 7.) Claimant appealed the Service Center's determination. (C.R., Item No. 8.)

A Referee conducted a hearing, at which Claimant failed to appear. (C.R., Item No. 11 at 1.) Employer's witness, Joe Johnson (Johnson), provided the only testimony at the hearing. (*Id*.) Johnson testified that Claimant started working for Employer as a full-time production employee on July 24, 2017. (*Id*. at 3.) Employer suspended Claimant from work on June 25, 2019, after an incident occurred during his shift on the previous day. (*Id*.) Johnson stated that Claimant rinsed out a dirty vat that had been filled with raw meat and then dumped the dirty water from the vat into a drain in the floor, on top of which drain were racks of fresh pepperoni. (*Id*. at 3-4.) The dirty water hit the wall near the drain and splashed onto the pepperoni, contaminating it. (*Id*. at 4.) Ultimately, Employer had to dispose of the pepperoni.[2] (*Id*. at 4-5.) Johnson maintained that, while Employer does not have a specific policy concerning the destruction of product, Claimant's actions were unacceptable by any standard. (*Id.* at 4-5.) Employer's cameras recorded the incident, and Johnson and the Referee watched the video at the hearing. (*Id.* at 4.) As they watched the video, Johnson pointed out that there was another drain near the one where Claimant had dumped out the vat, and the other drain did not have any product around it. (*Id*. at 4-5.) Johnson stated that, while dumping water into the other drain would not have been more acceptable, Claimant likely would not have been terminated because no product would have been destroyed. (*Id*.) Johnson further noted that, had a United States Department of Agriculture inspector witnessed Claimant pouring out the dirty water and splashing it on the pepperoni, the factory could have been shut down due to the risk of contamination. (*Id*. at 5.)

---

[2] The exact loss total was not determined. (C.R., Item No. 11 at 5.)

After the incident, Johnson spoke with Claimant on the phone, and Claimant did not provide any reason or justification why he poured the dirty water in the drain. (*Id*.) Instead, Claimant apparently admitted wrongdoing and asked for his job back. (*Id*.) Johnson testified that Claimant suffers from amnesia as a result of brain surgery in 2017, and that he and Employer were aware of Claimant's condition. (*Id*. at 5-6.) Johnson stated that Claimant initially started working in January of 2017, but he left in order to have the brain surgery. (*Id*. at 5-6.) After Claimant recovered, Employer rehired Claimant in July of 2017. (*Id*.) When he returned to work, Claimant did not provide Johnson or Employer with documents or information stating that he needed accommodations. (*Id*.) There was also nothing to indicate that Claimant's behavior was at all out of place when he returned. (*Id*. at 6.) Johnson, therefore, did not believe that Claimant's health condition triggered the incident. (*See id*. at 5-6.) Employer terminated Claimant's employment on June 27, 2019. (*Id*. at 3.)

Following the hearing, the Referee issued a decision, denying Claimant unemployment compensation benefits under Section 402(e) of the Law. (C.R., Item No. 12.) In so doing, the Referee made the following findings of fact:

1. The claimant was last employed as a full-time Production Employee with the employer from July 24, 2017[,] until June 27, 2019 . . . .

2. The claimant had previously been working for the employer but had gone on a medical leave of absence.

3. The claimant was rehired on July 24, 2017.

4. The claimant did not inform the employer about any limitations which would have allowed the claimant to be given accommodations.

5. On June 25, 2019, the claimant was cleaning a dirty bag filled with raw meat.

6. The claimant cleaned the bag with a hose and then took the bag along [sic] some contents and dumped them in a place where pepperoni packages were kept on the site.

3

7. The claimant[']s actions were caught on camera.

8. The claimant was aware or should have been aware that his actions would cause the product to be contaminated.

9. When questioned[,] the claimant said he did not know why he did it and gave no response except that he knew that it was wrong.

10. On June 27, 2019, the employer discharged the claimant for his conduct.

(*Id*. at 1-2.) In its reasoning, the Referee concluded that Claimant's conduct was below the standard of behavior Employer had a right to expect from Claimant. (*Id*. at 3.)

Claimant appealed the Referee's decision, arguing that he missed the hearing because of his health condition. (C.R., Item No. 13 at 4.) The Board remanded the case for another hearing so the Referee could receive Claimant's evidence regarding his nonappearance and the merits of Claimant's appeal. (C.R., Item Nos. 14, 15, 16.) The Board stated that the testimony from the second hearing, as well as the rest of the record, would thereafter be sent to the Board for a final decision. (C.R., Item No. 15 at 1.)

Claimant and Johnson appeared at the second hearing. (C.R., Item No. 17 at 1.) Claimant testified that his health condition caused him to miss the first hearing. (*Id*. at 3-4.) Claimant suffers from memory loss and migraines multiple times a day, and he was going through a migraine at the time of the hearing. (*Id*. at 4.) Due to his memory loss, Claimant did not realize he missed the hearing until he received a notice in the mail from the Board. (*Id*.) Claimant provided the Referee with a copy of a medical report detailing his condition. (*Id* at 5.) The Referee then proceeded to question Claimant regarding his employment and the incident. Claimant testified that, after his surgery, his doctor cleared him for full-time employment with no limitations or accommodations on his

4

ability to work. (*Id*. at 6.) Claimant essentially testified that he was unaware what he did was wrong. (*Id*. at 7-8.) He stated that he did not pour water on the pepperoni but that he poured it directly down the drain. (*Id*. at 8.) Claimant noted that, even if water had gotten on the pepperoni, the pepperoni is subsequently washed and peeled before being sold. (*Id*.) Claimant, therefore, did not understand how he could have contaminated the product. (*Id*.) Claimant admitted that he called Johnson afterward to apologize and ask for his job back, but he testified that he was unaware what he did was wrong. (*Id*. at 8-9.) After watching the video recording from Employer's cameras, Claimant stated it was not him in the video. (*Id*. at 12-13.) Claimant admitted that he was working at the time the video was taken, but he noted that the person's face in the video is not visible and Claimant denied it was him. (*Id*.) When Johnson asked Claimant about their phone conversation after the incident and about Claimant's apparent admission to pouring the water in the drain near the pepperoni, Claimant argued that he never admitted to the act: "No, I did not admit to doing that. That's not me on that tape, sir." (*Id*. at 13.)

The Board determined that Claimant had good cause for missing the initial hearing, but it affirmed the Referee's decision:

> The [Board] remanded to accept testimony regarding the claimant[']s failure to appear at the first hearing. The claimant failed to appear because of brain surgery and memory loss. The Board finds this is good cause for the nonappearance. Therefore, the Board has considered the testimony and evidence on the merits offered at the remand hearing. In giving consideration to the entire record, the Board concludes that the determination made by the Referee is proper under the [Law[3]] as interpreted by the appellate courts. Therefore, the Board adopts and incorporates the Referee[']s conclusions. The Board amends Finding of Fact 4 to read, ["]The claimant's doctor cleared him for full duty with

[3] 43 P.S. §§ 751-918.10.

no limitations.["]  The Board adopts and incorporates the remainder of the Referee's findings.

At the remand hearing, the claimant denied that it was him on video. The Board determines credibility.  The Board resolves all conflict in testimony in favor of the employer.  The claimant . . . failed to establish good cause for his actions.

(C.R., Item No. 18 at 1.)  Claimant now petitions this Court for review.

On appeal to this Court,[4] Claimant argues:  (1) the Board's findings of fact are not supported by substantial evidence; and (2) the Board made an error of law in determining that Claimant's actions constituted willful misconduct.

We first address whether there is substantial evidence in the record to support the Board's findings of fact.  In an unemployment compensation case, the findings of fact made by the Board are binding on appeal if the record, viewed comprehensively, contains substantial evidence to support those findings. *Brandt v. Unemployment Comp. Bd. of Rev.*, 643 A.2d 78, 79 (Pa. 1994). Substantial evidence has been defined by this Court as "relevant evidence upon which a reasonable mind could base a conclusion."  *Johnson v. Unemployment Comp. Bd. of Rev.*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986).  In reviewing the record to determine whether substantial evidence exists, we examine the evidence and testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences logically and reasonably drawn from the evidence.  *Id*. As the ultimate finder of fact, the Board has authority to make determinations of credibility which are "not subject to re-evaluation on judicial review." *Peak v. Unemployment Comp. Bd. of Rev.*, 501 A.2d 1383, 1388 (Pa. 1985)

---

[4] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence.  2 Pa. C.S. § 704.

6

(quoting *Miller v. Unemployment Comp. Bd. of Rev.*, 405 A.2d 1034, 1036 (Pa. Cmwlth. 1979)).

Claimant's substantial evidence argument is essentially twofold: (1) substantial evidence does not exist to support finding of fact number 7—*i.e.*, that Claimant's actions were caught on video—because the evidence of record does not establish that Claimant was the individual on Employer's video pouring water in the drain; and (2) even if it was Claimant on the video, substantial evidence does not exist to support finding of fact number 8—*i.e.*, that Claimant was or should have been aware that his actions would contaminate Employer's product. We address each in turn.

Claimant contends that Employer did not prove it was Claimant on the video, because the individual's face on the video is not visible and numerous other employees travel the area in question. With regard to the video evidence, the Board determined that Claimant was not credible in denying it was him on the video. Furthermore, Claimant admitted twice during his testimony that he poured the water down the drain in question.[5] Claimant's second admission directly addressed the video: "I didn't pour the [water] directly onto your product. Your product is on a rack. They hang it up like this. You—on the video, it will show you that I poured this [water]—the water into a drain. The video will show that." (C.R., Item No. 17 at 9.) It was only after Claimant watched the video, in which the individual's face

---

[5] Claimant testified that he was directed by his supervisor to obtain a pail or vat to hold meat. (C.R., Item No. 17 at 7.) After obtaining the pail, Claimant stated that he rinsed it out and poured the water into a drain: "I did not pour no water [on the pepperoni]—I poured the water into the drain and they said that I contaminated the meat." (*Id*. at 8.) Furthermore, Johnson testified that during a phone conversation with Claimant after the incident, Claimant admitted to him that he dumped water down the drain. (C.R., Item No. 11 at 5; *see also* C.R., Item No. 17 at 8-9.)

is not visible, that Claimant argued it was not him. (*Id.* at 12-13.) It is apparent that the Board did not find credible Claimant's last-minute identity challenge. Accordingly, we conclude that the Board's finding that Claimant's actions were caught on camera is supported by substantial evidence of record.

We next consider whether substantial evidence supports the Board's determination that Claimant was or should have been aware that his conduct would contaminate Employer's product. Claimant argues that Employer did not present any competent evidence or testimony that Claimant was or should have been aware that dumping water in the drain would contaminate Employer's product. For the reasons set forth below, we disagree.

At the outset, Johnson testified at the first hearing that Claimant should have been aware that his actions would result in the contamination of Employer's product:

> [Johnson]: After it was, the meat was empty out of the tank, he brought it over to an area it should not have been in. He cleaned it out with a hose and he walked down the hallway and dumped it under [sic] into a drain. . . .
>
> [Referee]: What did he dump? The water?
>
> [Johnson]: The dirty water and the contents of the vat. He dumped it into a drain, and on top of the drain were racks of pepperoni. So, the dirty water hit the wall and slashed [sic] on to the pepperoni, destroying that product.
>
> [Referee]: Maybe he didn't see the pepperoni?
>
> [Johnson]: He did.

(C.R., Item No. 11 at 3-4.)

At the second hearing, the Referee questioned Claimant regarding his state of mind at the time of the incident. Claimant testified that there are drains in every room in the factory where water can be poured out. (C.R., Item No. 17 at 8.) After having worked in his position for two-and-a-half years, Claimant testified he was

8

aware that the product stored on the racks would subsequently be washed and cleaned in 100-degree water, and peeled and sliced before being sold to consumers. (*Id.*) Claimant stated that the meat stored on the racks often had mold on it, and, therefore, it was critical that the meat was cleaned prior to sale. (*Id*.) For these reasons, Claimant could not understand how his act of pouring water down the drain, even if some of the water splashed onto the meat, could contaminate the meat to the point it had to be destroyed. (*Id.*)

Employer presented the testimony of Johnson, who testified that Claimant should have been aware of the potential for contamination because the drain was directly underneath Employer's product. Employer introduced video evidence of the incident, which supports Johnson's testimony concerning the proximity of the drain to the product. Although Claimant challenged Johnson's testimony at the second hearing, the Board resolved all conflicting testimony in favor of Employer. (C.R., Item No. 18 at 1.) The Board, therefore, did not find Claimant's testimony credible that he was not aware of the potential for contamination. The Board makes determinations of credibility that are not subject to reevaluation by this Court. *Peak*, 501 A.2d at 1388. Accordingly, we conclude the Board's finding that Claimant was or should have been aware that his actions would result in the contamination of Employer's product is supported by substantial evidence of record.

Claimant next argues that the Board made an error of law in determining that his actions constituted willful misconduct. Under Section 402(e) of the Law, an individual is ineligible for unemployment compensation benefits if the discharge or temporary suspension from work is due to willful misconduct. The term willful misconduct is not defined by statute. We have explained that, in the unemployment context, willful misconduct is: "(1) the wanton or willful disregard of the employer's

9

interests; (2) the deliberate violation of the employer's rules; (3) the disregard of the standards of behavior which an employer can rightfully expect from an employee; and (4) negligence demonstrating an intentional disregard of the employer's interests or the employee's duties and obligations to the employer." *Allen v. Unemployment Comp. Bd. of Rev.*, 189 A.3d 1128, 1134 (Pa. Cmwlth. 2018). It is well-established that "[w]hether conduct rises to the level of willful misconduct is a question of law to be determined by this Court." *Brown v. Unemployment Comp. Bd. of Rev.*, 49 A.3d 933, 937 (Pa. Cmwlth. 2012). An employer bears the initial burden of proving an employee engaged in willful misconduct. *Adams v. Unemployment Comp. Bd. of Rev.*, 56 A.3d 76, 78-79 (Pa. Cmwlth. 2012). If willful misconduct is based upon a violation of an employer's policy or work rule, the employer must establish the rule's existence, its reasonableness, and that the employee was aware of the rule when he violated it. *Brown*, 49 A.3d at 937. A violation of an employer's policy or work rule is not necessary to establish willful misconduct; an employer may establish willful misconduct if an employee's conduct is obviously below the standard of behavior an employer has a right to expect from an employee or if the conduct is clearly inimical to an employer's interests. *Biggs v. Unemployment Comp. Bd. of Rev.*, 443 A.2d 1204, 1205-06 n.3 (Pa. Cmwlth. 1982). Furthermore, in order to demonstrate willful misconduct, an employer must present evidence "indicating that the conduct was of an intentional and deliberate nature." *Grieb v. Unemployment Comp. Bd. of Rev.*, 827 A.2d 422, 426 (Pa. 2003). An employee's negligence will only constitute willful misconduct where "it is of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer." *Id*. at 425-26 (internal

10

quotations omitted). Finally, in determining whether willful misconduct has been committed, we consider all the circumstances surrounding the employee's conduct. *Rebel v. Unemployment Comp. Bd. of Rev.*, 723 A.2d 156, 158 (Pa. 1998).

Claimant argues that his actions did not rise to the level of willful misconduct because Employer did not establish a policy or work rule that Claimant violated. If anything, Claimant argues his conduct was an isolated act of negligence that did not fall below the standard of behavior Employer had a right to expect from Claimant. The Referee, however, relying on "competent and credible first-hand testimony," found that Claimant was or should have been aware of the possibility for contamination and that Claimant knew that his actions were wrong. (C.R., Item No. 12 at 2-3.) Based upon those findings, the Referee and Board did not err in concluding that Claimant engaged in willful misconduct.

To reiterate, a violation of Employer's policy or work rule is not necessary to find that Claimant engaged in willful misconduct. Claimant's contention to the contrary, therefore, is incorrect. We disagree with Claimant's assertion that the Board erred in failing to conclude that his conduct was an isolated act of negligence that did not rise to the level of willful misconduct. The Board found that Claimant was or should have been aware that his actions would result in the contamination of Employer's product. Knowingly and unnecessarily risking the destruction of Employer's product constitutes conduct below the standard of behavior Employer had a right to expect from Claimant.

For the foregoing reasons, we affirm the order of the Board.

_____
P. KEVIN BROBSON, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ron Beckham, : 
              Petitioner : 
            : 
          v. : No. 1735 C.D. 2019
            : 
Unemployment Compensation : 
Board of Review, : 
              Respondent : 

# **O R D E R**

AND NOW, this 11th day of December, 2020, the order of the Unemployment Compensation Board of Review is AFFIRMED.

 

 

                                            
_____
                                            
P. KEVIN BROBSON, Judge