# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Unique S. Johnson, : 
                    Petitioner : 
                       : 
       v. :   No. 1829 C.D. 2019
                       :   Submitted: June 26, 2020
Unemployment Compensation : 
Board of Review, : 
                Respondent : 

BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**           **FILED: December 31, 2020**

Petitioner Unique S. Johnson (Claimant), *pro se*, petitions for review of an order of the Unemployment Compensation Board of Review (Board), denying Claimant unemployment compensation benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law),[1] relating to willful misconduct. For the reasons set forth below, we affirm.

Claimant applied for unemployment compensation benefits on May 31, 2019, after separating from her position as an Administrative Assistant with Dietz & Watson (Employer). (Certified Record (C.R.), Item Nos. 2, 12 at 6.) The Erie UC

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

Service Center (Service Center) denied Claimant unemployment compensation benefits pursuant to Section 402(e) of the Law. (C.R., Item No. 6.) Claimant appealed the Service Center's determination. (C.R., Item No. 7.) A hearing was scheduled to determine in the first instance whether Claimant's appeal was timely filed. (C.R., Item No. 9.) Claimant appeared at the hearing before the Referee accompanied by counsel. (C.R., Item No. 10 at 1.) Based on Claimant's testimony at the first hearing, the Referee issued a continuance to hear the merits of the case. (C.R., Item Nos. 11, 12 at 1.)

Claimant, her counsel, and Employer's witness, Joe Johnson (Johnson), appeared at the second hearing. (C.R., Item No. 12 at 1.) Johnson testified that Employer terminated Claimant's employment on May 30, 2019, due to excessive tardiness. (*Id*. at 8.) Johnson stated that Claimant had been warned twice about her tardiness prior to her discharge—once via email, which served as her first warning, and once in a formal write-up on May 22, 2019. (*Id*. at 9-10.) Claimant was then late again on May 29, 2019, and May 30, 2019, and Johnson stated Employer made the decision to terminate Claimant's employment. (*Id*.) Johnson introduced Employer's work rule, which provides that more than two days of tardiness within a thirty-day period is considered excessive. (*Id*.) Employer reported to the Service Center in its separation document that Claimant was tardy fifteen times between April 23, 2019, and May 22, 2019. (C.R., Item No. 4 at 1.) Johnson noted that Employer skipped the third step in the work rule, which was a temporary work suspension, because Claimant exhibited the same tardiness behavior over the three previous months. (C.R., Item No. 12 at 10.) Johnson testified that, in such a case, Employer's work rule allows for progressing from a second warning directly to termination. (*Id.*)

2

Claimant testified that she was never late intentionally. (C.R., Item No. 12 at 12.) Claimant introduced a letter detailing a train delay on May 29, 2019, which caused her to clock in at 9:15 a.m. (*Id.*) Claimant stated she arrived at work on time on May 30, 2019, but, by the time she walked upstairs to clock in, it was 9:02 a.m. (*Id.* at 14.) Claimant stated that she spoke to her supervisor about continuous train delays over the period of time that encompassed her tardiness. (*Id.* at 13.) Claimant would leave her house at 7:45 a.m. every day to get to work. (*Id.* at 14.) When the train was running late, Claimant would often take an Uber or Lyft to make it to work by 9:00 a.m. (*Id.* at 13-14.) Claimant testified that around the time of her tardiness, she went to the doctor and was diagnosed with high blood pressure. (*Id.* at 15-17.) Claimant stated that a doctor's note and a chart listing her blood pressure were faxed to her supervisor, but she did not personally provide any documentation to her supervisor or anyone else at human resources. (*Id.* at 17-18.) Claimant testified that her supervisor texted Claimant to let her know the documents were received. (*Id.* at 18.) As a result of her diagnosis, Claimant attempted to avoid overexerting herself, and this affected her commute to work. (*Id.* at 16.) Claimant admitted, however, that her elevated blood pressure did not prevent her from leaving her house earlier in the morning to make an earlier train. (*Id.* at 17-18.) The Referee pressed Claimant on this point:

> [Referee:] Did the doctor say you can't take the train 15 minutes earlier to compensate for the fact that you . . .
>
> [Claimant:] No, she didn't say that . . . It was just, you know . . . take it easy . . .
>
> [Referee:] Instead of leaving at 7:45, could you leave at 7:30 or at 7:20?
>
> [Claimant:] There was times that I left at 7:30, there was times that I left at 7:40. And it—like, I don't have control over . . .

[Referee:] I understand that you don't have control over the subway system, however, you have control over when you leave the house.

[Claimant:] Yes.

(*Id*. at 17-19.)

Following the hearing, the Referee issued a decision, allowing Claimant's appeal to proceed *nunc pro tunc* but ultimately denying Claimant unemployment compensation benefits under Section 402(e) of the Law. (C.R., Item No. 13.) In so doing, the Referee concluded Claimant was late fifteen times between April 23, 2019, and May 22, 2019, and late again on May 29, 2019, and May 30, 2019. (*Id*. at 2-3.) While noting that Claimant was diagnosed with high blood pressure, the Referee concluded that Claimant's testimony was devoid of "any reason why she could not or did not adjust her commute, pre- or post-medical advice, if that was the source of most of the late arrivals." (*Id*. at 4.) Claimant, therefore, did not establish good cause for violating Employer's attendance policy. (*Id*.)

The Board affirmed the Referee's decision, concluding that Claimant's appeal was timely but denying benefits pursuant to Section 402(e) of the Law. (C.R., Item No. 15 at 4.) The Board issued its own findings of fact, which largely mirrored those of the Referee. The findings relevant to our review are as follows:

> 9. The claimant was last employed as a full-time administrative assistant by Dietz & Watson from December 16, 2016[,] . . . and her last day of work was May 30, 2019.
>
> 10. The employer maintains an attendance policy providing, in part, tardiness and absenteeism will be considered excessive if they occur [two] times during any [thirty]-day period. Warnings will be inclusive of any combination of attendance occurrences, tardiness and absences.
>
> 11. The claimant was aware or should have been aware of the employer's policy.

4

12. On May 22, 2019, the claimant was issued a written warning about her excessive tardiness. She had 15 infractions between April 23, 2019[,] and May 22, 2019.

13. The claimant attributed her tardiness to public transportation, mainly a subway train, for her commute.

14. The claimant left her house approximately the same time every day but would occasionally leave a little earlier.

15. When the trains were delayed, the claimant would leave the subway station and hire a car to finish her commute.

16. On May 23, 2019, the claimant was not feeling well and was told by her medical provider to not overexert herself.

17. The claimant did not provide medical paperwork to human resources. The medical provider did not restrict the claimant from traveling earlier.

18. On May 29, 2019, the claimant arrived [fifteen] minutes late for work[,] which she attributed to her commute.

19. On May 30, 2019, the claimant arrived [fifteen] minutes late for work[,] which she attributed to her commute.

20. On May 30, 2019, the employer discharged the claimant for excessive tardiness.

(*Id*. at 1-2.) The Board offered the following reasoning:

Here, the employer established its attendance policy. The claimant should have been aware of it. The claimant was warned for having [fifteen] attendance infractions between April and May 2019. Despite this warning, the claimant was late multiple times at the end of May.

The claimant tried to blame her tardiness on her commute and high blood pressure. However, the claimant did not demonstrate why she could not adjust her commute to ensure she got to work on time. It is well-settled that an employer has the right to expect its employees will attend work when scheduled and that they will be on time. Habitual tardiness is behavior that is inimical to an employer[']s interest.

In her appeal, the claimant argues she had good cause for her last tardy episode. The claimant argues the clock said she was late when she clocked in, but the employer did not offer verification. At the hearing, the claimant testified that by the time I got upstairs to clock in, the clock

said 9:02.  The claimant had been informed that she should make sure she is at her desk and ready to work by 9:00.  The claimant also admitted at the hearing her start time was to be 9:00.  The claimant also argues she "had no idea [she] was on thin ice . . . ."  The Board does not credit the claimant.  Days before discharge, the claimant was issued a written warning about her excessive tardiness.  She had [fifteen] infractions between April 23, 2019[,] and May 22, 2019.  The warning stated that violations will lead to further discipline up to and including termination.  The claimant had more violations.  The claimant was excessively tardy, disobeyed existing rules, and disregarded warnings.  She needed to figure out a way to get herself to work on time.  She failed to do that.

(*Id*. at 3-4.)  Claimant now petitions this Court for review.

On appeal to this Court,[2] Claimant argues:  (1) substantial evidence does not exist to support the Board's findings of fact; (2) Claimant had good cause for her tardiness; and (3) the Referee erroneously excluded evidence relevant to Claimant's health.

We first consider whether there is substantial evidence to support the Board's findings of fact.  The findings of fact made by the Board are binding on appeal if the record, viewed as a whole, contains substantial evidence to support those findings.  *Brandt v. Unemployment Comp. Bd. of Rev.*, 643 A.2d 78, 79 (Pa. 1994).  Substantial evidence has been defined by this Court as "relevant evidence upon which a reasonable mind could base a conclusion."  *Johnson v. Unemployment Comp. Bd. of Rev.*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986).  In reviewing the Board's findings, we examine the evidence and testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences logically and reasonably drawn from the evidence.  *Id*.  In determining whether the Board erred in issuing its

---

[2] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence.  2 Pa. C.S. § 704.

findings, this Court is bound by the record below, and we cannot accept allegations of fact that are not supported by record evidence. *Hollingsworth v. Unemployment Comp. Bd. of Rev.*, 189 A.3d 1109, 1112-13 (Pa. Cmwlth. 2018).

Employer reported to the Service Center in its separation document that Claimant was tardy fifteen times between April 23, 2019, and May 22, 2019. (C.R., Item No. 4 at 1.) Johnson testified that Claimant was written up for tardiness on May 22, 2019, and this write-up was Claimant's second warning concerning her lateness. (C.R., Item No. 12 at 10.) Johnson testified that Claimant was then late again on May 29, 2019, and May 30, 2019. (*Id*. at 9.) Claimant did not dispute Johnson's testimony. To the contrary, Claimant admitted that she was late reporting to her office area on May 29, 2019, and May 30, 2019. (*Id*. at 7, 12.) Johnson introduced testimony regarding Employer's tardiness policy, which provides that more than two instances of tardiness in a thirty-day period is considered excessive, and excessive tardiness is grounds for termination. (*Id*. at 9-10.) As a result of Claimant's continued tardiness, Johnson stated that Employer made the decision to terminate Claimant's employment. (*Id*.)

Nonetheless, Claimant argues Employer terminated her employment for personal reasons, not excessive lateness. Claimant's brief details several incidents and exchanges Claimant had with her supervisor, which Claimant argues reveal an alternative motive for termination. Claimant did not raise this issue before the Referee or on appeal to the Board. During the hearing before the Referee, while Claimant did mention one of the incidents with her supervisor, Claimant discussed this issue in relation to her high blood pressure, as follows:

> [Referee:] What does -- can you connect [the incident with your supervisor] on the 21st with the 22nd? Did somebody do something to you at work that you had to go to the doctor?

7

[Claimant:]   That's what I'm saying, it was just an incident that happened where I . . .

[Referee:]   That your supervisor wasn't around and you had to look for her.

[Claimant:]   She came out, she yelled and she screamed at me in the Office . . .

[Referee:]   And that caused your lateness on May 29th?

[Claimant:]   No, no. The 22nd, I had got a write[-]up on the 22nd. I so happened to already have a doctor's appointment. My pressure was up . . . I told her the last few incidents that happened at work. My pressure was like sky high.  So that next day, which was the 23rd, I called out because I wasn't feeling well.

(C.R., Item No. 12 at 15.)

This Court is bound by the record below.  Claimant did not develop this factual argument at the hearing before the Referee, and we cannot consider it now on appeal.  *Hollingsworth*, 189 A.3d at 1112-13.  Moreover, Employer's testimony and evidence constitute substantial evidence for the Board's finding that Claimant was terminated for excessive tardiness.  Thus, we conclude the Board's finding that Claimant was terminated for excessive tardiness is supported by substantial evidence.

Claimant next argues that her actions did not rise to the level of willful misconduct.  Under Section 402(e) of the Law, an individual will be ineligible for unemployment compensation benefits where her termination or suspension from work is due to willful misconduct.  The term "willful misconduct" is not defined by statute.  The courts have defined "willful misconduct" as follows:  "(1) wanton and willful disregard of an employer's interests; (2) deliberate violation of an employer's rules; (3) disregard for standards of behavior which an employer can rightfully expect of an employee; or (4) negligence indicating an intentional

8

disregard of the employer's interests or the employee's duties and obligations." *Grieb v. Unemployment Comp. Bd. of Rev.*, 827 A.2d 422, 425 (Pa. 2003) (quoting *Navickas v. Unemployment Comp. Bd. of Rev.*, 787 A.2d 284, 288 (Pa. 2001)). It is well-established that "[w]hether conduct rises to the level of willful misconduct is a question of law to be determined by this Court." *Brown v. Unemployment Comp. Bd. of Rev.*, 49 A.3d 933, 937 (Pa. Cmwlth. 2012). An employer bears the burden to prove that it discharged an employee for willful misconduct. *Adams v. Unemployment Comp. Bd. of Rev.*, 56 A.3d 76, 78-79 (Pa. Cmwlth. 2012). If the willful misconduct in question is based upon a violation of an employer's policy or work rule, the employer must establish the rule's existence, its reasonableness, and that the employee was aware of the rule when they violated it. *Brown*, 49 A.3d at 937. An employee's tardiness constitutes willful misconduct when such tardiness lacks good cause, and especially where an employee was given warnings for past tardiness violations. *Pickett v. Unemployment Comp. Bd. of Rev.*, 420 A.2d 792, 793 (Pa. Cmwlth. 1980).

Claimant does not dispute that she received two warnings as a result of fifteen tardiness episodes in April and May of 2019, nor does she deny that she was again late on two occasions at the end of May. Instead, Claimant argues that her high blood pressure and train delays were good cause for her tardiness. We disagree. In the first instance, Claimant only discovered she had high blood pressure during her doctor's visit on May 22, 2019. (C.R., Item No. 12 at 15.) It was at that time her doctor advised Claimant not to overexert herself. (*Id*. at 15-16.) Claimant's high blood pressure, therefore, cannot be attributed to Claimant's tardiness prior to May 22, 2019. Moreover, Claimant testified that her high blood pressure did not prevent her from rising earlier in the morning to take a train that would get her to

9

work on time. (*Id*. at 17-18.) Claimant admitted during her testimony that her doctor never told her she could not wake up earlier in the morning to attend work promptly. (*Id*.) Claimant's high blood pressure is, therefore, irrelevant to the issue of Claimant's tardiness. Regarding the train delays, Claimant only introduced evidence of a train delay on May 29, 2019. (*Id*. at 12.) Claimant did not produce evidence excusing her tardiness on May 30, 2019. Furthermore, while Claimant's tardiness on May 29, 2019, may be excused due to the train delay, Claimant's termination was a result of her incessant tardiness over a thirty-day period, including May 30, 2019. (*Id*. at 9-10.) The tardiness in late May simply pushed Employer past the tipping point. We also cannot accept Claimant's argument that she was unaware that she was "on thin ice," as she continued to be tardy following Employer's written warning on May 22, 2019. Accordingly, Claimant's tardiness constitutes willful misconduct for which Claimant did not have good cause.

Turning to the issue of the exclusion of evidence, based on our analysis above, it is clear that the medical chart and doctor's letter are irrelevant to this determination. Claimant was terminated for excessive tardiness unrelated to her blood pressure, not excused absences. The doctor's letter pertained only to the excused absences. Claimant's high blood pressure did not prevent Claimant from arriving to work on time. Moreover, Claimant testified extensively about the doctor's visit, her excused absences, and the contents of the medical chart—*i.e.*, her high blood pressure. The Board credited Claimant's testimony and made findings acknowledging her health status around late May. Thus, even if both documents were relevant to this matter, the Referee's exclusion likely would have been harmless.

10

Accordingly, we affirm the order of the Board.

_____
P. KEVIN BROBSON, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Unique S. Johnson,                          :
                    Petitioner              :
                                            :
        v.                                  :        No. 1829 C.D. 2019
                                            :
Unemployment Compensation                   :
Board of Review,                            :
                    Respondent              :

# **O R D E R**


        AND NOW, this 31st day of December, 2020, the order of the Unemployment

Compensation Board of Review is hereby AFFIRMED.


                                    _____
                                    P. KEVIN BROBSON, Judge