IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Sharon L. Daly, | : | **CASES CONSOLIDATED** |
| Petitioner | : | |
| | : | |
| v. | : | No. 104 C.D. 2023 |
| | : | No. 105 C.D. 2023 |
| Unemployment Compensation | : | No. 106 C.D. 2023 |
| Board of Review, | : | No. 107 C.D. 2023 |
| Respondent | : | Submitted: May 7, 2024 |

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                    HONORABLE MICHAEL H. WOJCIK, Judge
                    HONORABLE STACY WALLACE, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WALLACE                                          FILED:  July 11, 2024


        Sharon L. Daly (Claimant), *pro se*, petitions for review of the December 2, 2022 orders of the Unemployment Compensation (UC) Board of Review (Board), which affirmed the decisions of a UC Referee (Referee): (1) denying Claimant's claim for Pandemic Unemployment Assistance (PUA); (2) assessing a non-fraud overpayment of PUA benefits in the amount of $6,435.00; (3) assessing a non-fraud overpayment of Federal Pandemic Unemployment Compensation (FPUC) benefits in the amount of $10,200.00; and (4) assessing a non-fraud overpayment of Lost Wage Assistance (LWA) benefits in the amount of $1,800.00.  On appeal, Claimant argues the Board erred in determining she was ineligible for PUA and that she is unable to repay the funds.  Because Claimant was not eligible for PUA benefits and has not requested a waiver of the overpayments, we affirm.

## I.    Background

Claimant filed a PUA claim with an effective date of March 1, 2020, with the Department of Labor and Industry (Department). Certified Record (C.R.) at 64. The Department issued Claimant PUA benefits totaling $6,435.00 between March of 2020, and October of 2021, FPUC benefits totaling $10,200.00 between April of 2020 and July of 2020, and LWA benefits totaling $1,800.00 between August of 2020 and September of 2020. *Id.* at 64, 84. On November 1, 2021, the Department issued Claimant a PUA disqualifying determination, which denied Claimant benefits pursuant to Section 2102(a)(3)[1] of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act).[2] C.R. at 64. Claimant appealed the PUA disqualifying determination. *Id.* at 26-28.

On May 3, 2022, the Referee held a hearing on Claimant's appeal. *See generally* C.R., Item No. 7. The Referee advised Claimant at the beginning of the hearing that the only issues the Referee would determine were whether Claimant was eligible for PUA and whether Claimant received overpayments of PUA, FPUC, and LWA. C.R. at 55. The Referee then went through a packet of hearing exhibits, which Claimant previously received as attachments to the Referee's Notice of Hearing. *Id.* at 55-56. Claimant did not object to their admission, so the Referee admitted the hearing exhibits as evidence. *Id.* at 56.

Claimant testified on her own behalf and explained she had been a nanny and pet sitter for many years through Care.com.[3] *Id.* at 57. In one of Claimant's previous phone conversations with the UC Service Center, a case note from which the Referee

---

[1]   15 U.S.C. § 9021(a)(3).
[2]   15 U.S.C. §§ 9001-9141.
[3]   Care.com provides "a network of background checked caregivers" for children, seniors, and pets. https://www.care.com/ (last visited June 17, 2024).

admitted as Exhibit A 016, Claimant reported she only worked once as a pet sitter in the 2020 year. *Id.* at 5. In asking for further information about Claimant's pet sitting, the following exchange occurred:

[Referee:]    When were you last employed?

[Claimant:]  I believe it was that last payment I sent in for $50 for that pet sitting position.  I think that was in - - oh, I'm not sure.  It might have been March 2020.  I don't remember the exact date.

. . . .

[Referee:]    Okay.  Now with the work that you were doing, with the pet sitting and house sitting, were you - - did you receive a W2, 1099, for tax purposes, did you receive any kind of forms for doing those services?

[Claimant:]  No, I did not receive any type of forms, sir.  It was just cash under the table, like babysitting is so much of that.  And I didn't really make that much, so it wasn't considered like a business, per se.

. . . .

[Referee:]    Now, were you ever asked, and I don't know you said this was cash under the table work?  When you filed your taxes, did you - - did you list this as income?

[Claimant:]  No, I - - no, I did not because it was like I said, it was like babysitting money.  **You know, it wasn't that much actually, you know, because the things have slowed down.  I really wasn't making that much.  I had several clients through the years, but it pretty much moved away or the pets died or whatever.**

[Referee:]    Okay.

[Claimant:]  **So I only had one client at the time.**

*Id.* at 56-58 (emphasis added).

3

After the hearing, the Referee determined "Claimant['s] testimony was insufficient to demonstrate[] that she was attached to the labor market at the time of the COVID-19 pandemic." C.R. at 66. As a result, the Referee concluded Claimant was ineligible for PUA pursuant to Section 2102(a)(3) of the CARES Act. C.R. at 66, 68. Noting that a claimant can only receive FPUC and LWA benefits if she is eligible for an underlying UC program, including PUA, the Referee concluded Claimant's ineligibility for PUA rendered her ineligible for FPUC and LWA benefits. *Id.* Therefore, the Referee assessed non-fraud overpayments of PUA, FPUC, and LWA in the amounts set forth above. *Id.* at 68.

Claimant appealed the Referee's decisions to the Board, arguing she was eligible for PUA, she did not commit fraud, and she does not "have the assets to pay this money back." *See* C.R., Item No. 9. The Board considered "the entire record in this matter," and concluded "the determination made by the Referee . . . is proper." C.R. at 84. "Therefore, the Board adopt[ed] and incorporate[d] the Referee's findings and conclusions."[4] *Id.* The Board also explained that Claimant's testimony "was vague and insufficient to demonstrate that she was attached to the labor market at the time of the COVID-19 pandemic. [C]laimant did not provide proof of wages or hours worked prior to March of 2020." *Id.* at 85.

The Board advised Claimant that the non-fraud overpayments of PUA, FPUC, and LWA "must be repaid unless a waiver is requested and granted." *Id.* The Board then, in a separate, bold paragraph, indicated "**[C]laimant may wish to contact the UC Service Center and request a waiver of the overpayments.**" *Id.*

---

[4] The Board changed the date in the Referee's Finding of Fact 7 to correct an erroneous date.

Claimant appealed the Board's orders[5] to this Court. On appeal, Claimant argues she was eligible for PUA because the pandemic caused her clients to stop traveling, eliminating their need for her pet-sitting services. *See* Claimant's Br. at 5-7. Claimant also argues she cannot repay the overpayments "because of [her] financial situation." *Id.* at 5.

This Court reviews the Board's orders to determine whether (a) substantial evidence supports the Board's findings of fact, (b) the Board violated a petitioner's constitutional rights, (c) the Board violated agency practice and procedure, or (d) the Board committed an error of law.[6] *See* 2 Pa.C.S. § 704. Generally, it is beyond our Court's scope of review to address questions, other than the validity of a statute, not properly raised before the Board. *See* 2 Pa.C.S. § 703(a).

## II. Analysis

In UC cases, the Board's findings of fact "are conclusive on appeal so long as the record, taken as a whole, contains substantial evidence to support those findings." *Brandt v. Unemployment Comp. Bd. of Rev.*, 643 A.2d 78, 79 (Pa. 1994) (citations omitted). "Substantial evidence is relevant evidence upon which a reasonable mind could base a conclusion." *Johnson v. Unemployment Comp. Bd. of Rev.*, 502 A.2d 738, 740 (Pa. 1986) (citation omitted). "In determining whether

---

[5]  The Referee's office generated four separate docket numbers for Claimant's appeal (one for the PUA disqualifying determination and one for each of the three overpayments). Although the Referee consolidated these matters and held only one hearing, the Referee issued four separate determinations. *See generally* C.R. Each determination had a separate cover sheet, which identified the docket specific information. *Id.* In all other respects, the Referee's determinations were identical. *Id.* Claimant's appeal was separately docketed at all four docket numbers. *Id.* Likewise, the Board's single decision was separately docketed at all four docket numbers. *Id.* Claimant filed four separate petitions for review with this Court. The Board then filed an Application for Consolidation with this Court, which we granted by Order dated May 2, 2023.

[6]  Although Claimant did not articulate whether she was challenging the Board's factual findings or its conclusions of law, we construe her arguments as challenging both.

substantial evidence exists to support the Board's findings, we must examine the testimony in the light most favorable to the prevailing party below, giving that party the benefit of any inference which can be drawn logically and reasonably from the evidence." *Id.* "In determining whether the Board erred in issuing its findings, this Court is bound by the record below, and we cannot accept allegations of fact that are not supported by record evidence." *Harris v. Unemployment Comp. Bd. of Rev.*, 247 A.3d 477, 484 (Pa. Cmwlth. 2021) (citation omitted).

Section 2102(a)(3) of the CARES Act establishes eligibility for PUA for a "covered individual," which is defined as "an individual who--"

> (i) is not eligible for regular compensation or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 9025 of this title, including an individual who has exhausted all rights to regular unemployment or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 9025 of this title;
>
> (ii) provides self-certification that the individual--
>
> > (I) is otherwise able to work and available for work within the meaning of applicable State law, except the individual is unemployed, partially unemployed, or unable or unavailable to work because--
> >
> > > (aa) the individual has been diagnosed with COVID-19 or is experiencing symptoms of COVID-19 and seeking a medical diagnosis;
> > >
> > > (bb) a member of the individual's household has been diagnosed with COVID-19;
> > >
> > > (cc) the individual is providing care for a family member or a member of the individual's household who has been diagnosed with COVID-19;
> > >
> > > (dd) a child or other person in the household for which the individual has primary caregiving responsibility is unable to

6

attend school or another facility that is closed as a direct result of the COVID-19 public health emergency and such school or facility care is required for the individual to work;

(ee) the individual is unable to reach the place of employment because of a quarantine imposed as a direct result of the COVID-19 public health emergency;

(ff) the individual is unable to reach the place of employment because the individual has been advised by a health care provider to self-quarantine due to concerns related to COVID-19;

(gg) the individual was scheduled to commence employment and does not have a job or is unable to reach the job as a direct result of the COVID-19 public health emergency;

(hh) the individual has become the breadwinner or major support for a household because the head of the household has died as a direct result of COVID-19;

(ii) the individual has to quit his or her job as a direct result of COVID-19;

(jj) the individual's place of employment is closed as a direct result of the COVID-19 public health emergency; or

(kk) the individual meets any additional criteria established by the Secretary for unemployment assistance under this section; or

(II) is self-employed, is seeking part-time employment, does not have sufficient work history, or otherwise would not qualify for regular unemployment or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 9025 of this title, and meets the requirements of subclause (I); . . . .

15 U.S.C. § 9021(a)(3)(A)(i)-(ii).

Claimant did not provide any proof of her wages, hours, or employment as a pet sitter before the COVID-19 pandemic. Instead, she admitted that before the COVID-19 pandemic, her pet-sitting activities had slowed down, she was not

7

working very often, and she had only one client at the time. Claimant also told a UC Service Center representative she worked only once as a pet sitter in 2020 before the COVID-19 pandemic. Based on this evidence, and considering the record as a whole, we conclude substantial evidence supports the Board's findings.

In addition, we agree with the Board that Claimant's evidence was "insufficient to demonstrate she was attached to the labor market at the time of the COVID-19 pandemic." *See* C.R. at 85. As a result, we conclude the Board did not commit an error of law in determining Claimant was ineligible for PUA benefits under Section 2102(a)(3) of the CARES Act.

To this Court's knowledge, Claimant has not submitted a written request for waiver of repayment of her PUA, FPUC, or LWA overpayments. Therefore, the issue of "waiver of repayment of the overpayment of [PUA, FPUC, and LWA] benefits could not be decided by the Board in the instant proceeding," *see Rouse v. Unemployment Compensation Board of Review*, 41 A.3d 211, 213 (Pa. Cmwlth. 2012), and we cannot consider Claimant's arguments regarding her inability to repay the overpayments.

### III. Conclusion

For the reasons set forth above, we affirm the Board's orders. Despite the Board's recommendation, Claimant **still**, as far as we know, has not requested a waiver of her PUA, FPUC, and LWA overpayments by contacting the UC Service Center to obtain the appropriate forms for submitting a written request for a waiver.

 

 

_____
STACY WALLACE, Judge

8

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Sharon L. Daly, | : **CASES CONSOLIDATED** |
| Petitioner | : |
| | : |
| v. | : No. 104 C.D. 2023 |
| | : No. 105 C.D. 2023 |
| Unemployment Compensation | : No. 106 C.D. 2023 |
| Board of Review, | : No. 107 C.D. 2023 |
| Respondent | : |

# **O R D E R**

**AND NOW**, this 11th day of July 2024, the Unemployment Compensation Board of Review's December 2, 2022 orders are **AFFIRMED**.

_____
STACY WALLACE, Judge