# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Laithe Harris, : 
                  Petitioner : 
                          :
      v. : No. 401 C.D. 2020
                          : Argued: December 7, 2020
Unemployment Compensation : 
Board of Review, :
                Respondent :

BEFORE: HONORABLE P. KEVIN BROBSON, Judge[1]
              HONORABLE J. ANDREW CROMPTON, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION BY JUDGE BROBSON**         **FILED: March 17, 2021**

Laithe Harris (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board), dated April 1, 2020. In this order, the Board concluded that Claimant's appeal was timely under Section 501(e) of the Unemployment Compensation Law (Law),[2] but that Claimant was ineligible for benefits under Section 401(c) of the Law,[3] relating to the improper filing of unemployment claims. In addition, the Board held that Claimant is responsible for a fault overpayment of $14,630 under Section 804(a) of the Law.[4] For the reasons set forth below, we reverse the order of the Board.

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Brobson became President Judge.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 821(e).

[3] 43 P.S. § 801(c).

[4] 43 P.S. § 874(a).

## I. BACKGROUND

The matter before us involves one of four appeals filed by Claimant from a series of determinations issued by the Duquesne Unemployment Compensation Service Center (Service Center). The determinations primarily concerned earnings that Claimant failed to report in unemployment applications for claim weeks ending between 2012 and 2016. (Certified Record (C.R.), Item No. 8 at 3-4, 16.) Claimant filed a consolidated appeal of the determinations on October 3, 2019. (*Id.* at 13.) Claimant's appeal was separated into four subparts corresponding to the claim weeks at issue: No. B-19-09-H-4801 (H-4801); No. B-19-09-H-4803 (H-4803); No. B-19-09-H-4807 (H-4807); and No. B-19-09-H-4818 (H-4818). All four appeals involve the same set of operative facts. The instant appeal is from H-4807, involving claim weeks ending January 3, 2015, through July 18, 2015. (C.R., Item No. 8 at 7; C.R., Item No. 10 at 8; C.R., Item No. 11 at 2.) The notices concerning H-4818 were mailed to Claimant in August 2016, while the other notices were mailed in April 2018. (C.R., Item No. 8 at 3-7.) Section 501(e) of the Law[5] provides that an appeal is timely if filed within fifteen days of the date the notice of determination was mailed. Claimant's filing in 2019, therefore, was untimely, and a hearing was scheduled to determine in the first instance whether the appeals could proceed on the merits. (C.R., Item No. 8.) Claimant and his wife attended the hearing, but Claimant's employer did not appear. (*Id.* at 2.)

Claimant testified that he never received any of the notices. (C.R., Item No. 8 at 8-10.) Claimant stated that he was the victim of identity theft by his daughter, and, therefore, he believed the determinations were sent to his daughter's address. (*Id.* at 9-10.) At the time of the hearing, Claimant's address for

---

[5] 43 P.S. § 821(e).

the previous eleven years was a residence in Manchester, Pennsylvania, while his daughter resided in Carlisle, Pennsylvania. (*Id.* at 8.) The Referee confirmed that the Carlisle address was the address on file for Claimant at the time the notices were mailed. (*Id*. at 14.) Claimant testified that he never resided at the Carlisle address. (*Id*. at 11.) Claimant learned of the identity theft and potential fraud in late 2016 or 2017, and, thereafter, Claimant became engaged in investigations with the police, the Pennsylvania Department of Labor and Industry (Department), and the Federal Trade Commission. (*Id*. at 8-13.) Despite having worked with a Department investigator on the identity theft beginning in 2018, Claimant's address was not corrected in the unemployment system until August 20, 2019. (*Id*. at 11.) Claimant could not recall being asked to verify his mailing address by a Department representative at any point after learning of the identity theft. (*Id.* at 13-14.) On September 27, 2019, Claimant spoke with a Service Center representative who informed Claimant to file a late appeal of the determinations. (*Id*. at 13.) Claimant faxed his appeal on October 3, 2019. (*Id*.)

Based on Claimant's testimony at the first hearing, the Referee scheduled a second hearing to hear the merits of the appeals. (C.R., Item No. 9.) Claimant attended the hearing, accompanied by his wife as a potential witness. (C.R., Item No. 10.) Claimant testified that he had worked for New Standard Corporation since 1987, but he was placed on disability sometime in 2018. (*Id*. at 9-10.) Claimant stated that his employer would typically shut down during Christmas time, and he would file for unemployment benefits around that time of year. (*Id*. at 10-11.) The Referee noted that Claimant's first application was filed in July 2012. (*Id*.) Claimant testified that, to the best of his knowledge, the only time he would have filed a claim for unemployment compensation benefits would have

3

been in December in each of the years from 2012 to 2015, but he was not certain he filed in each of those years. (*Id*. at 10-11, 16.) Beginning in 2012, Claimant stated he was the victim of identity theft by his daughter, Rhonda Harris. (*Id*. at 11-13.) Claimant's daughter filed for unemployment benefits on Claimant's behalf for a number of weeks between July 2012 and July 2016, the vast majority of which weeks Claimant was working full time. (*Id*. at 12-14.) Claimant was unaware that his daughter had filed the unemployment claims in question, and he never received any of the unemployment compensation funds.[6] (*Id*.) Claimant's daughter was living with Claimant at the Manchester residence until sometime in late 2014 or early 2015, at which time Claimant's daughter moved to Carlisle. (C.R., Item No. 8 at 14.) The claim record states that Claimant's address in the unemployment system was changed to the Carlisle address on July 2, 2015. (C.R., Item Nos. 1 at 2, 8 at 11, 11 at 2.) Claimant admitted that he provided his unemployment Personal Identification Number (PIN) and social security number to his daughter in 2012 so she could help him file for unemployment benefits. (C.R., Item No. 10 at 14.) Claimant enlisted his daughter's help because he is not familiar with computers and the unemployment offices where Claimant normally received help with filing were closed. (*Id*.) Claimant only discovered the identity theft after he received a statement from the Internal Revenue Service in 2016, notifying him of taxes owed on approximately $47,000 in income from unemployment compensation benefits. (*Id*. at 13.) Claimant stated that he immediately contacted the Department to inform it of the identity theft after his discovery. (*Id*.)

---

[6] It is unclear from the testimony whether Claimant received no funds at all or whether he received funds only around Christmas time when he had valid unemployment claims.

4

The Referee issued a decision with regard to appeal H-4807, concluding that the appeal was timely under Section 501(e) of the Law as a result of a breakdown in the administrative process but holding that Claimant was ineligible for benefits under Sections 401,[7] 4(u),[8] and 404(d)[9] of the Law for the weeks ending January 3, 2015, through July 18, 2015. (C.R., Item No. 11 at 4.) The Referee explained:

> In this case, the claimant filed an application for benefits effective December 14, 2014[,] and qualified for a weekly benefit amount of $573 and a partial benefit credit of $172. The claimant was employed full[ ]time with New Standard Corp., and during the weeks ending January 3, 2015[,] through July 18, 2015, the claimant worked full[ ]time and his gross earnings exceeded the combination of his qualifying benefit amount and partial benefit credit.

(*Id.*) The Referee further determined that Claimant was ineligible under Section 401(c) of the Law because Claimant significantly underreported his earnings in the claims for those weeks. (*Id.*) Lastly, the Referee concluded that Claimant was responsible for a fault overpayment under Section 804(a) of the Law for the funds issued, an amount totaling $14,630. (*Id.*) The Referee reasoned that, while Claimant's testimony was credible that his daughter stole his identity and applied for benefits without his knowledge, Claimant willingly provided his daughter his unemployment PIN and other confidential information to file for benefits on his behalf, which information Claimant was "required not to disclose." (*Id.*)

---

[7] 43 P.S. § 801.

[8] 43 P.S. § 753(u).

[9] 43 P.S. § 804(d).

5

Claimant appealed the Referee's decision to the Board, which affirmed. (C.R., Item Nos. 12, 13, 14, 15, 16.) In so doing, the Board issued its own findings of fact, as follows:

1. On December 15, 2014, the claimant applied for unemployment compensation benefits, effective December 14, 2014.

2. On December 15, 2014, the Department . . . mailed to the claimant the unemployment compensation handbook [(UC Handbook)], which notified him, ["]**Protect Your PIN:** Your personal identification number (PIN) and Social Security number identify you when you file a claim or access benefit information. Your PIN has the same legal authority as your signature. **DO NOT GIVE YOUR PIN TO ANYONE, including family members. It is your responsibility to file your own biweekly claims. It is ILLEGAL for another person to file your biweekly claims for you. If you give your PIN to another person, or allow another person to gain access to your PIN, you are responsible for any improper benefit payments that occur as a result.["]**

3. The claimant gave his PIN to his daughter, who lived with him, to file claims on his behalf.

4. For each week ending December 20, 2014, through July 18, 2015, the claimant's daughter filed claims for benefits while the claimant was working full time and significantly underreported his remuneration.

5. For the weeks ending January 3 through July 18, 2015, the claimant's account received $14,630.00 because he shared his PIN with his daughter.

6. On [July 2, 2015], the claimant's address was changed to his daughter's new address in Carlisle, Pennsylvania.[10]

7. In January and February 2018, the claimant participated in the Department's investigation into his allegation against [sic] that his daughter was fraudulently filing claims for benefits using his account.

_____

[10] It appears the Board made an error in finding that Claimant's address was changed on January 8, 2016. The claim record states that Claimant's address was changed on July 2, 2015, which corresponds with the finding of the Referee. (C.R., Item Nos. 1 at 2, 11 at 2.) We do not find, however, that this error has a material impact upon the case.

8. On April 18, 2018, the Department mailed to the claimant's daughter's address in Carlisle a determination denying benefits to the claimant for the weeks ending December 20, 2014, through July 18, 2015, under Section 401(c) of the . . . Law, while also denying benefits under Section 401 and Section 4(u) of the Law for many of the same weeks.

9. On April 19, 2018, the Department mailed to the Carlisle address a determination establishing a $14,630.00 fault overpayment under Section 804(a) of the Law.

10. May 3 and 4, 2018, were the final days to file valid appeals from the determinations to a referee.

11. The claimant did not appeal by May 3 or 4, 2018, because he did not receive the determinations.

12. On [August] 20, 2019, the claimant updated his address with the Department.[11]

13. On September 27, 2019, a Department representative advised the claimant of how to file a late appeal from the determinations.

14. The claimant's appeal was filed on October 3, 2019.

(C.R., Item No. 16 at 1-2 (emphasis in original).) With regard to the fault overpayment, the Board reasoned:

Here, the claimant's daughter fraudulently filed claims for benefits on his behalf, but was enabled to do so because the claimant shared his PIN with her. The claim record reveals the [UC Handbook] was mailed to the claimant before his address was changed to Carlisle. The Board notes that the [UC Handbook] specifically advised the claimant he would be "**responsible for any improper benefit payments that occur as a result.**" . . . Here, the claimant received $14,630.00 in benefits to which he was not entitled, so an overpayment exists. Because the claimant's gross negligence led to his improper receipt of

---

[11] It appears the Board again made an error in finding that Claimant's address was changed on September 20, 2019. During testimony, the Referee directly referenced the Board's records when agreeing with Claimant that his address was updated on August 20, 2019. (C.R., Item No. 8 at 11, 14.) This date also corresponds with the finding of the Referee. (C.R., Item No. 11 at 2.) Once again, however, we do not find that this error has a material impact upon the case.

benefits, he is at fault for receiving these benefits and they must be repaid under Section 804(a) of the Law.

(*Id*. at 3 (emphasis in original).) Claimant now petitions this Court for review.

## II. ISSUES

On appeal to this Court,[12] Claimant argues: (1) the Board's findings of fact are not supported by substantial evidence of record; (2) the Board erred as a matter of law in concluding that Claimant committed gross negligence by sharing his unemployment PIN and other confidential information with his daughter; and (3) the Board erred as a matter of law in holding that Claimant is liable for a fault overpayment when he was not the recipient of the unemployment funds in question. We address each in turn.

## III. DISCUSSION

### A. Substantial Evidence

In an unemployment compensation case, the Board's findings of fact are binding on appeal if the findings, after reviewing the record as a whole, are supported by substantial evidence. *Brandt v. Unemployment Comp. Bd. of Rev.*, 643 A.2d 78, 79 (Pa. 1994). Substantial evidence has been defined by this Court as "relevant evidence upon which a reasonable mind could base a conclusion." *Johnson v. Unemployment Comp. Bd. of Rev.*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986). We examine the evidence and testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences logically and reasonably drawn from the evidence. *Id*. In determining whether the Board erred in issuing its findings, this Court is bound by the record below, and we cannot accept

---

[12] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. § 704.

allegations of fact that are not supported by record evidence. *Hollingsworth v. Unemployment Comp. Bd. of Rev.*, 189 A.3d 1109, 1112-13 (Pa. Cmwlth. 2018).

Claimant argues that the Board erred in considering the UC Handbook in finding of fact number two, because the UC Handbook was not introduced at the Referee hearing or included as part of the certified record. Because Claimant had no opportunity to rebut evidence concerning the UC Handbook, the Board's consideration of the UC Handbook was improper.

The Board concedes that "[o]rdinarily, the Board and this Court may not consider evidence not entered into the record at the referee's hearing." (Resp't Br. at 8) (*see Hollingsworth*). The Board contends, however, that the principle of "official notice" permitted it to take the UC Handbook into consideration. The claim record also supports the fact that the UC Handbook was mailed to Claimant on December 15, 2014. (C.R., Item No. 1 at 3.) For these reasons, the Board argues it properly considered the UC Handbook despite the fact it was not entered into the record or considered during the Referee hearing. We agree with the Board.

Official notice is the administrative counterpart of judicial notice. Judicial notice allows a court to establish a fact that is not subject to reasonable dispute because it can accurately and readily be determined from sources the accuracy of which cannot be questioned. Pa. R.E. 201(b)(2). Where facts are in dispute, however, judicial notice should not be taken. *HYK Constr. Co., Inc. v. Smithfield Twp.*, 8 A.3d 1009, 1017 (Pa. Cmwlth. 2010), *appeal denied*, 21 A.3d 1195 (Pa. 2011). Moreover, judicial notice does not necessarily establish a fact; after judicial notice is taken, that fact constitutes evidence, and, like any evidence, it may be rebutted. *Id.* A party is entitled upon timely request to be heard concerning

a fact judicially noticed. Pa. R.E. 201(e). Similarly, official notice "authorizes the finder of fact to waive proof of facts that cannot seriously be contested," thereby permitting "an agency to take notice of facts which are obvious and notorious to an expert in the agency's field." *Ramos v. Pa. Bd. of Prob. & Parole*, 954 A.2d 107, 109-10 (Pa. Cmwlth. 2008) (quoting *Falasco v. Pa. Bd. of Prob. & Parole*, 521 A.2d 991, 994 n.6 (Pa. Cmwlth. 1987)). Official notice is broader than judicial notice, in that it contemplates the expertise of administrative agencies and recognizes that such agencies are a "storehouse of information on that field consisting of reports, case files, statistics and other data relevant to its work."[13] *Id*.

At the outset, it is significant to note that the text of the UC Handbook itself is not being challenged here. In other words, Claimant does not contend that the contents of the UC Handbook are in dispute, such that official notice would be improper. Rather, Claimant's qualm lies with his inopportunity at the Referee hearing to challenge his receipt of the UC Handbook and his awareness of its contents. Claimant's brief states: "The [UC] Handbook itself was not introduced as part of the record, and there was no testimony to support proof of mailing or delivery. The Referee did not ask Claimant if he had ever read or received the [UC] Handbook." (Pet'r Br. at 9.) After careful review of the Board's decision, however, it is clear the Board based its findings concerning the mailing of the UC Handbook

---

[13] The General Rules of Administrative Procedure prescribe:

> Official notice may be taken by the agency head or the presiding officer of such matters as might be judicially noticed by the courts of this Commonwealth, or any matters as to which the agency by reason of its functions is an expert. Any participant shall, on timely request, be afforded an opportunity to show the contrary. Any participant requesting the taking of official notice after the conclusion of the hearing shall set forth the reasons claimed to justify failure to make the request prior to the close of the hearing.

1 Pa. Code § 35.173.

and Claimant's constructive awareness almost entirely on the *claim record*, not the UC Handbook itself. Consequently, because Claimant does not dispute the text of the UC Handbook and his challenge is to the contents of the claim record, we see no legal reason preventing the Board from noticing its own handbook.[14] As the ultimate finder of fact, the Board can notice its own records. *See Shoemaker v. State Emps. Ret. Bd.*, 688 A.2d 751, 753 n.3 (Pa. Cmwlth.), *appeal denied*, 698 A.2d 597 (Pa. 1997).

We further conclude that whether Claimant had the opportunity to contest the UC Handbook evidence at the Referee hearing is irrelevant. In the unemployment context, our precedent holds that when information is mailed to a party's last known address and the information is not returned as undeliverable, the party is presumed to have received it. *Mihelic v. Unemployment Comp. Bd. of Rev.*, 399 A.2d 825, 827 (Pa. Cmwlth. 1979). In *Hollingsworth*, we held that the mailing of the unemployment compensation handbook relevant to that case and the claim record,

---

[14] In support of his argument, Claimant cites *Saracino v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1188 C.D. 2016, filed March 31, 2017), and *Williams v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 626 C.D. 2016, filed March 10, 2017), two unreported and, therefore, non-precedential opinions of this Court. Both of these cases are distinguishable. In *Saracino*, we disallowed evidence of the relevant unemployment compensation handbook on appeal where the section in question was not introduced at the referee hearing. The handbook was otherwise discussed at the referee hearing, however, where the claimant denied that he had any knowledge of the section in question. The Board concluded that the claimant's testimony was credible. Accordingly, we did not permit the Board to cite the section of the handbook on appeal to this Court. *Saracino*, slip op. at 3. In *Williams*, the Board asked this Court to take judicial notice of the unemployment compensation handbook relevant to that case, which the claim record supported was mailed to the claimant. We declined to take judicial notice, citing our sister Superior Court in *In re D.S.*, 622 A.2d 954, 959 (Pa. Super. 1993), for the proposition that "courts should not take judicial notice of something that was neither noticed below nor supported by evidence." *Williams*, slip op. at 3. Here, however, the UC Handbook was noticed below by the Board. Moreover, official notice is broader than judicial notice in permitting the Board to recognize its own records. Our opinion here, therefore, is not in conflict with the precedent of this Court.

11

standing alone, constituted sufficient evidence to support the Board's finding that the claimant was aware of the handbook's rules regarding reporting full-time work. *Hollingsworth*, 189 A.3d at 1111, 1113.

Here, the claim record, contained in the record certified to this Court on appeal, indicates that the UC Handbook was mailed to Claimant on December 15, 2014. (C.R., Item No. 1 at 3.) There is no notation in the claim record that the UC Handbook was returned as undeliverable, nor does Claimant argue that he never received it. Claimant testified that his daughter was living with him until she moved to Carlisle in 2014 or 2015, and the claim record shows that Claimant's address was changed on July 2, 2015. (*Id*. at 2.) The UC Handbook, therefore, was mailed to Claimant's correct address.

After noting the foregoing facts, the Board essentially concluded that Claimant *should have been aware* of the warning concerning confidential information: "The claim record reveals the unemployment compensation handbook was mailed to the claimant before his address was changed to Carlisle. The Board notes that the handbook specifically advised the claimant he would be '**responsible for any improper benefit payments that occur as a result.**'" (C.R., Item No. 16 at 3.) Thus, contrary to Claimant's assertion, the Board's conclusion is properly based on substantial evidence contained *in the record*. The fact that Claimant did not have an opportunity to testify concerning the UC Handbook does not prevent the Board from making findings based on valid, substantial evidence contained in the claim record or from supporting such findings by taking official notice of the text of the UC Handbook. Accordingly, we conclude that the Board's finding of fact that Claimant should have been aware of the contents of the UC Handbook is supported by substantial evidence.

12

## B. Fault Overpayment

Claimant next challenges the Board's conclusion that he is liable for a fault overpayment. Section 804(a) of the Law provides that "[a]ny person who by reason of his fault has received any sum as compensation under this act to which he was not entitled, shall be liable to repay . . . a sum equal to the amount so received by him and interest." Under Section 804(b) of the Law, 43 P.S. § 874(b), where the compensation is issued or received due to no fault of the claimant, recoupment of funds is deducted from future compensation, if any, as opposed to imposing a fault overpayment. The word "fault" in Section 804(a) means "an act to which blame, censure, impropriety, shortcoming, or culpability attaches." *Fugh v. Unemployment Comp. Bd. of Rev.*, 153 A.3d 1169, 1174 (Pa. Cmwlth. 2017) (quoting *Daniels v. Unemployment Comp. Bd. of Rev.*, 309 A.2d 738, 742 (Pa. Cmwlth. 1973)). Negligence alone is not sufficient to establish fault. *Id*. at 1176-77. Rather, fault is demonstrated by a showing of knowing recklessness or gross negligence. *Id*. at 1176. The Board or Referee must make findings concerning an actor's state of mind in order to establish fault. *Castello v. Unemployment Comp. Bd. of Rev.*, 86 A.3d 294, 298 (Pa. Cmwlth. 2013). An actor's intent may be ascertained through circumstantial evidence, however. *See Cochran v. Cmwlth.*, 450 A.2d 756, 759 (Pa. Cmwlth. 1982).

The Board concluded that Claimant's actions constituted gross negligence. The Pennsylvania Supreme Court recently defined the concept of gross negligence in *Feleccia v. Lackawanna College*, 215 A.3d 3 (Pa. 2019). The *Feleccia* Court explained, "gross negligence involves more than a simple breach of the standard of care (which would establish ordinary negligence), and instead describes a 'flagrant' or 'gross deviation' from that standard." *Id*. at 21. Importantly, however, the Court

13

noted that "gross negligence does not rise to the level of the intentional indifference or 'conscious disregard' of risks that defines recklessness, but it is defined as an 'extreme departure' from the standard of care, beyond that required to establish ordinary negligence, and is the failure to exercise even 'scant care.'" *Id*. at 20. With this standard in mind, we consider Claimant's argument.

Claimant contends that the Board erred in concluding that his conduct was grossly negligent because Claimant shared his PIN and confidential information with his daughter in 2012, two years before the UC Handbook was mailed to Claimant. Claimant, therefore, was not aware of the confidentiality requirements when he shared his confidential information with his daughter. Furthermore, Claimant argues the Board made no findings regarding Claimant's state of mind.

As noted above, our precedent requires that the Board make findings concerning an actor's state of mind to establish fault under Section 804(a) of the Law. The Board did not conclude that Claimant *was aware* of the confidentiality restrictions contained in the UC Handbook. The Board only stated that Claimant was advised as to its contents. Thus, the Board's conclusion is, essentially, that Claimant *should have been aware* of the UC Handbook's restriction on sharing confidential information because the UC Handbook was mailed to Claimant's correct address. The Board's conclusion was not based on any other testimony or evidence from the Referee hearing regarding Claimant's state of mind, and no other testimony or evidence was offered. Thus, while the Board did make an implicit finding concerning Claimant's state of mind, we conclude that, standing alone, the Board's finding that Claimant should have been aware of the UC Handbook's restrictions is not sufficient to establish gross negligence.

14

The facts support this conclusion. Claimant provided his daughter his confidential information in 2012. Claimant is of older age and testified that he is not familiar with computers. Claimant, therefore, turned to his daughter for help. Roughly two years later, after Claimant received the UC Handbook in the mail, the Board alleges Claimant was grossly negligent in failing to immediately rescind his confidential information from his daughter. The Board, however, concluded that Claimant was unaware that his daughter was filing unemployment claims at all. (C.R., Item No. 16 at 1-3.) Claimant, therefore, had no reason to think to rescind his information from his daughter, even if he looked at the UC Handbook and saw the warning. Claimant did not learn of the fraud until 2016 or 2017, at which time he participated in several investigations against his daughter, including with the local police, the Federal Trade Commission, and the Department. This suggests that Claimant likely would have taken action to protect his confidential information had he thought it was in danger of abuse. Accordingly, without any other testimony or evidence indicating Claimant's state of mind led to gross negligence, we cannot conclude that Claimant's actions were an extreme departure from the ordinary standard of care or that Claimant failed to exercise even scant care regarding his confidential information.

In sum, the Board makes a significant leap from the mailing of the UC Handbook to gross negligence without showing exactly how Claimant's deviation from the standard of care was *gross*.[15] Under the Board's interpretation,

---

[15] We further note Claimant testified that the criminal charges Claimant filed against his own daughter were dropped because the Department investigator failed to contact the Northeastern Regional Police Department to provide information regarding the identity theft. (C.R., Item No. 10 at 15.) If Claimant's testimony is to be believed, we are perplexed by the notion that the Department, while seeming to agree that Claimant's daughter engaged in identity theft to

15

every claimant who receives a UC Handbook in the mail commits gross negligence if they violate its terms. This absurd result reveals the difficulty in squaring the Board's argument with the present facts. Accordingly, while we held in the substantial evidence section that the lack of testimony concerning the UC Handbook and Claimant's awareness did not preclude the Board's findings of fact, we conclude it is fatal to the Board's showing of gross negligence. The fact that Claimant *should have been aware* of the UC Handbook's restrictions does not, without more, necessarily constitute gross negligence. As a result, we conclude the Board erred as a matter of law in determining Claimant's actions constituted gross negligence and in imposing a fault overpayment in the amount of $14,630.[16]

## C. Receipt of Unemployment Compensation Benefits

Claimant's last issue raised on appeal concerns the fact that he did not receive any of the unemployment compensation funds in question. Claimant argues that, because he did not receive the fraudulently issued funds, he cannot be liable for a fault overpayment. We need not answer this question, however, as we have already concluded that Claimant is not liable for a fault overpayment.[17]

---

the detriment of both the Department and Claimant, chose to pursue the matter in the present forum.

[16] We do not here address the question of whether a claimant's violation of a provision in the Handbook could create liability for a fault overpayment. The Court questions the Department's reliance on the Handbook as a source of authority in this matter, as the Department appears to treat the Handbook as a substitute for a published regulation. Furthermore, the Department's position ignores the stark reality that some claimants will require assistance in filing their unemployment claims and that family members often provide such assistance.

[17] In *Barrick v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 189 C.D. 2016, filed Feb. 27, 2017), an unreported panel decision of this Court, we considered whether a claimant had established the basis for an appeal *nunc pro tunc* of fault overpayment determinations that occurred as a result of identity theft. On remand for the Board to address the merits, we opined that the essence of a fault overpayment claim is proof that the benefits at issue

16

## IV.  CONCLUSION

Accordingly, the order of the Board is reversed.

_____
P. KEVIN BROBSON, Judge

---

"were paid into an account that is owned by [the c]laimant or under her control." *Barrick*, slip op. at 9.  In other words, we suggested that in order for a fault overpayment to succeed, the claimant must have received the funds at issue.

Furthermore, we note that, in *Barrick*, the Court similarly questioned why the unemployment compensation authorities had not reported the matter to law enforcement authorities, stating that "[i]f [the c]laimant did not receive the payments, as she claims, she is a bystander but not the victim.  The Department is the victim."  *Id.* at 4, n.4.  Given that unemployment compensation authorities in the matter now before the Court once again declined to pursue legal actions against the perpetrator of identity theft that resulted in fraud against the Department and, instead, attempted to recoup its loss by seeking fault overpayments against what appears to be an unwitting claimant, is concerning.  The Department's position on the merits in both of these matters was tenuous at best.

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Laithe Harris,                                        :
                                Petitioner            :
                                                      :
                v.                                    :   No. 401 C.D. 2020
                                                      :
Unemployment Compensation                             :
Board of Review,                                      :
                                Respondent            :

# **O R D E R**

AND NOW, this 17th day of March, 2021, the order of the Unemployment Compensation Board of Review, dated April 1, 2020, is hereby REVERSED.

 

 

 

_____
P. KEVIN BROBSON, Judge